UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OHIO VALLEY PHYSICIANS, INC.,      Case No. 1:20-cv-453
et al.,      Dlott, J.
    Plaintiffs,      Litkovitz, M.J.

    v.

SCOTTSDALE INSURANCE CO.,      **ORDER AND REPORT**
et al.,      **AND RECOMMENDATION**
    Defendants.

This matter is before the Court on plaintiffs Ohio Valley Physicians, Inc. (OVP) and Ohio Valley Real Estate Company, LLC (OVREC) (collectively, OVPREC)'s motion to remand the case to the Lawrence County, Ohio Court of Common Pleas (Doc. 11), defendant Scottsdale Surplus Lines Insurance Company (Scottsdale Surplus)'s response in opposition (Doc. 13), and OVPREC's reply (Doc. 16). Scottsdale Surplus moved for leave, without opposition, to file a proposed surreply in support of its opposition to remand. (Docs. 17, 17-1). This matter is also before the Court on defendant Scottsdale Insurance Company (SIC)'s motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 15),[1] OVPREC's response in opposition (Doc. 18), and SIC's reply (Doc. 19). Defendants have requested oral argument on the motions to remand and dismiss. (*See* Doc. 13 at PAGEID #: 318, Doc. 19 at PAGEID #: 376).

The Court will grant the unopposed motion for leave to file a surreply for good cause shown. *See* S.D. Ohio Civ. R. 7.2(a)(2). Pursuant to S.D. Ohio Civ. R. 7.1, the Court finds that oral argument is not "essential to the fair resolution" of this case and denies defendants' requests

---

[1] The parties agree that OVPREC's amended complaint (Doc. 8) moots Scottsdale's prior motion to dismiss (Doc. 6) the now-superseded complaint (Doc. 3). (*See* Doc. 12 at PAGEID #: 316).

for oral argument. The Court recommends that the motion to remand be denied and the motion to dismiss be granted.

## I. Background[2]

OVP is an Ohio corporation that provides a range of health care services in Ohio, Kentucky, West Virginia, and South Carolina. OVP and OVREC, a West Virginia limited liability company, own the real property at 335 Jefferson Avenue, South Point, Ohio 45680 (the Property) at issue in this case. The Property is a medical facility.

OVPREC obtained insurance policy no. CPH0023573 on the Property (the Policy), which was effective for 91 days between December 31, 2019 and March 31, 2020. (Doc. 8-1 at PAGEID #: 166). Scottsdale Surplus "issued and/or underwrote" the Policy. (*Id.* at PAGEID #: 153). OVPREC alleges that on or about January 23, 2020, a sprinkler system malfunctioned in the Property and destroyed at least 17 rooms, among other widespread damage. A volunteer firefighter responding to the damaged Property identified its fire suppression system as the cause of the water damage. OVPREC has and continues to sustain losses in excess of $258,000 relative to the Property and OVPREC's business activities.

OVPREC notified defendants of the loss and made a timely claim. An SIC claim specialist, Leslie Scappucci, was assigned to the claim. She sent a claim denial letter on February 12, 2020. Ms. Scappucci concluded that the sprinkler system did not malfunction; instead, frozen pipes caused the loss, which is not a covered loss under the Policy. As the basis for the denial, Ms. Scappucci cited an adjuster inspection that occurred approximately one week after the incident giving rise to OVPREC's claim.

---

[2] The factual background is derived from the amended complaint and attached insurance policy. (Docs. 8, 8-1).

On May 1, 2020, OVPREC filed suit in the Lawrence County, Ohio Common Pleas Court against defendants alleging claims of breach of contract, bad faith, and declaratory judgment. (Doc. 1, Ex. 5). On June 5, 2020, Scottsdale Surplus removed the action. On July 2, 2020, OVPREC moved to remand. On August 4, 2020, SIC moved to dismiss.[3]

## II. Analysis

Both motions essentially require the Court to determine whether OVPREC has asserted a plausible claim for relief against SIC under applicable state law. The parties apply Ohio substantive law, and the Court will do the same. *See Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) ("In cases where our jurisdiction is based on diversity, we apply the substantive law of the state in which the district court sits according to the decisions of the state's highest court.") (citation omitted). The Court begins with the motion to dismiss.

### A. Motion to dismiss

SIC argues that each of OVPREC's three claims (breach of contract, declaratory judgment, and bad faith) depends on a contractual relationship between it and OVPREC that OVPREC is unable to demonstrate as a matter of law. OVPREC points to its allegations that SIC appears in the Policy, SIC's agent(s) signed the Policy, and SIC's employee handled the claim. Because the Court must construe these allegations in OVPREC's favor, OVPREC argues that is has plausibly alleged a contractual relationship to sustain its claims. Even if it has not, OVPREC argues that its bad faith claim against SIC does not require a contractual relationship.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575

---

[3] SIC filed its first motion to dismiss on June 12, 2020, which was mooted by the amended complaint on June 30, 2020.

(6th Cir. 2005)).  Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required.  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Id.* (internal quotation marks omitted) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  "A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Policy is also part of the pleadings.  Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Generally, "[i]f inconsistent with the allegations of the complaint, the exhibit controls."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012) (quoting *Mengel Co. v. Nashville Paper Prod. & Specialty Workers Union, No. 513*, 221 F.2d 644, 647 (6th Cir. 1955)).  This is particularly so as related to a contract, "because the contract represents an agreement between two or more parties to which the law binds them. . . ."  *Id.* at 442 (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).

### 1. **Breach of contract**

"In Ohio, an insurance policy is a contract, and the parties' rights under the policy are purely contractual in nature."  *Park-Ohio Indus., Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1218 (6th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Marsh*, 472 N.E.2d 1061, 1062 (Ohio 1984) (per curiam)).  "[A]n action for a breach of contract can only be maintained by the parties to the

contract or those deriving rights from the contracting parties." *DiPaolo v. Princeton Search LLC*, No. 1:13-cv-2185, 2014 WL 517476, at *2 (N.D. Ohio Feb. 6, 2014) (quoting *American Rock Mechanics, Inc. v. Thermex Energy Corp.*, 608 N.E.2d 830, 833 (Ohio Ct. App. 1992)). A breach of contract under Ohio law requires "the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Richelson v. Liberty Ins. Corp.*, 796 F. App'x 277, 281 (6th Cir. 2020) (quoting *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018)). As it relates to the existence of a contract, privity is "a fundamental prerequisite to bringing suit for the breach of a contract." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Tr.*, 804 N.E.2d 979, 990 (Ohio Ct. App. 2004). "Privity of contract specifically refers to '[t]hat connection or relationship which exists between two or more *contracting parties*.'" *Lippy v. Soc. Nat'l Bank*, 651 N.E.2d 1364, 1371 (Ohio Ct. App. 1995) (quoting Black's Law Dictionary at 1199 (6th ed. 1990)).

The parties do not dispute that Scottsdale Surplus and OVPREC are in privity as contracting parties under the Policy. OVPREC alleges in its amended complaint that both "[d]efendants issued and/or underwrote insurance policies to [OVPREC]. . . ." (Doc. 8 at ¶ 10). Scottsdale Surplus admits in its response to OVPREC's motion to remand that it "is the only proper defendant" to the lawsuit. (Doc. 13 at PAGEID #: 319). SIC, however, contends it is *not* a party to the Policy and, therefore, OVPREC's breach of contract claim fails as a matter of law.

OVPREC alleges that two parts of the Policy and one aspect of the administration of its claim support its position that SIC issued the Policy along with Scottsdale Surplus, thereby establishing privity of contract. First, OVPREC states that SIC is named on the Policy. The specific page to which it refers for this contention, however, is a "CLAIM REPORTING

5

INFORMATION" page, on which several insurance companies are listed under the insurance company Nationwide's registered trademark:



Scottsdale Insurance Company
National Casualty Company
Scottsdale Indemnity Company
Scottsdale Surplus Lines Insurance Company

**CLAIM REPORTING INFORMATION**

(Doc. 8-1 at PAGEID #: 164).  It goes on to state that "[y]our insurance policy has been placed with a Nationwide® insurance company." (*Id.*).  Further down, the page twice instructs the reader to "[p]lease refer *to your policy*" for claim reporting requirements and other terms and conditions.  (*Id.*) (emphasis added).

      The reference on the claim reporting page to SIC does nothing to establish, let alone suggest, that SIC is a party to the insurance contract.  Nothing on the Claim Reporting Information page indicates SIC has made any promises to OVPREC or undertaken any obligations under the insurance Policy.  Taking OVPREC's argument to its logical conclusion would mean that Nationwide, National Casualty Company, and Scottsdale Indemnity Company are also parties to the Policy because they too are listed on the claims reporting page.  Yet, there is no allegation of any contractual relationship between OVPREP and the other companies listed on this page.  Additionally, the plain language of the Claim Reporting Information page indicates that the page itself is not part of the Policy.  The claim reporting page includes two statements emphasizing that the reader should "refer to your policy" for more detailed information.  If the Claim Reporting Information page was construed to be part of the Policy, it would render the statements referencing "your policy" redundant and meaningless.  *See Wohl v. Swinney*, 888

N.E.2d 1062, 1066 (Ohio 2008) ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary."). *Cf. Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (under "usual rules for interpreting written instruments[,] . . . a writing, or writings executed as part of the same transaction, will be read as a whole, and the intent of each part will be gathered from a consideration of the whole."). The Court cannot reasonably infer that SIC has a contractual relationship with OVPREC based on SIC's inclusion on this lone, claim reporting information page. *See Keys*, 684 F.3d at 608 ("A plaintiff must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Iqbal*, 556 U.S. at 678). SIC is not named anywhere else in the Policy attached to the amended complaint, whereas Scottsdale Surplus is referenced throughout. Scottsdale Surplus's emblem,

## SCOTTSDALE
SURPLUS LINES INSURANCE COMPANY

heads most schedules, endorsements, and declarations in the Policy. (*See, e.g.,* Doc. 8-1 at PAGEID #: 168, 170, 172). SIC's single appearance on the claim reporting page does not establish privity of contract with OVPREC.

Second, OVPREC alleges in the amended complaint that employees, agents, and/or ostensible agents of SIC, Robert W. Horner, III, and Thomas Clark, signed the Policy, which demonstrates privity. But "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 782 (6th Cir. 2015) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). Here, the Policy's signature page unambiguously provides that the Policy is "[u]nderwritten by: Scottsdale Surplus Lines Insurance *Company*[.]" (Doc. 8-1 at PAGEID #:

7

165) (emphasis added). Just preceding the signature lines for "Secretary" and "President[,]" the Policy states, "[i]n Witness Whereof, *the Company* has caused this policy to be executed and attested." (*Id.*) (emphasis added). The only "Company" referenced on this signature page is Scottsdale Surplus. In addition, Thomas Clark, one of the signatories on the Policy, is listed as "[t]he officer" who is authorized and directed to accept service of process on behalf of the company. (Doc. 8-1, PAGEID #:170). The only company listed on this Endorsement page is Scottsdale Surplus. (*Id.*). Therefore, the Court finds that to the extent that OVPREC's amended complaint alleges that a SIC employee, agent, and/or ostensible agent signed the Policy on behalf of SIC instead of Scottsdale Surplus, those allegations contradict the unambiguous terms of the Policy that refer only to Scottsdale Surplus, and the Policy trumps those allegations. *Kreipke*, 807 F.3d at 782.

Finally, OVPREC points to the fact that an SIC employee handled its claim to support its privity argument.[4] Even if true, there is no legal basis to conclude that such a relationship equates to a *contractual* relationship between OVPREC and SIC. This Court addressed a similar argument in *Howard Indus., Inc. v. Ace Am. Ins. Co.*, No. 2:13-cv-0677, 2014 WL 978445, at *4 (S.D. Ohio Mar. 12, 2014). In *Howard*, the policy at issue listed only the Ace American Insurance Company as the "insurance company." The plaintiff named another company as a defendant to the lawsuit over coverage (Starr), which had drafted and underwritten the policy and adjusted the claim on behalf of Ace. *Id.* The Court determined that Starr was not a party to the insurance policy and, therefore, not a property party:

> Starr did not assent or agree to anything under the Policy. Tellingly, although Plaintiff references Starr's "binding contractual duties," . . . it does not point to any provision in the Policy in which Starr promised anything. . . . Moreover, one

---

[4] This argument is not offered explicitly in connection the motion to dismiss as it relates to breach of contract, but OVPREC raises it in connection with its motion to remand to show that SIC is a proper party to the action. (*See* Doc. 11-1 at PAGEID #: 312-13). Because the arguments are closely related, the Court addresses it here.

8

> cannot discern from the face of the Policy whether Starr is to receive any benefit therefrom. Without being either a promisor or a promisee, and without assenting to any clear and definite obligations, Starr cannot be considered a party to the Policy.
>
> Starr's role as the adjustor to whom claims must be reported under the Policy is analogous to an individual adjustor that an insurance company assigns to its claims. The individual adjustor is not a party to the insurance contract and therefore cannot be individually liable for a breach of that contract. *See Baker v. Nationwide Mut. Ins. Co.*, 9th Dist. No. 12CA010236, 2013-Ohio-1856, at ¶¶ 13-16 (May 6, 2013) (affirming the trial court's dismissal of an individual adjustor's motion to dismiss). The individual adjustor owes no duties, in his or her individual capacity, to the insured. *See id.*; *Johnson v. State Farm Ins. Co.*, 8th Dist. No. 75497, 1999 WL 1206603, at *3 (Ohio Ct. App. Dec. 16, 1999). Like the individual adjustor in *Baker*, here, Starr is not a party to the Policy and has no contractual relationship with Plaintiff.

*Id.* at *4-5.

Similar to the defendant Starr in *Howard*, SIC did not undertake any contractual obligations with OVPREC. SIC did not sign the Policy on its own behalf or make any promises to OVPREC. In contrast, Scottsdale Surplus (the underwriter in this case), "[i]n return for the payment of the premium, and subject to all the terms of this policy . . . agree[d] with [OVPREC] to provide the insurance as stated in this policy." (Doc. 8-1 at PAGEID #: 166). The Policy includes numerous other, more specific undertakings by Scottsdale Surplus, such as: "[w]e[5] will pay those sums that the insured becomes legal obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "[w]e will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (*Id.* at PAGEID #: 174, 225). Just as it pertained to Starr in *Howard*, there is a conspicuous absence of a promise, benefit, or any other

---

[5] The Policy defines "we", "us" and "our" as used therein as "the company providing this insurance." (*Id.* at 174, 225). As discussed above, Scottsdale Surplus is the only company referenced on the Policy's signature page and is the only company referenced throughout the Policy.

9

obligation pertaining to SIC in the Policy. *Howard*'s reasoning applies with equal force to the facts at bar.

Moreover, the fact that an employee of SIC allegedly adjusted OVPREC's claim does not establish privity of contract between SIC and OVPREC. The adjuster is not a party to the insurance contract and cannot be held liable for any breach of that contract. *See Howard*, 2014 WL 978445, at *5.

SIC also cites an array of case law from courts around the country in line with *Howard* (*see* Doc. 15 at PAGEID #: 351-52), which OVPREC does not address. Among those is *Rumick v. Liberty Mut. Ins. Co.*, No. 17 C 2403, 2018 WL 3740645 (N.D. Ill. Aug. 6, 2018). In *Rumick*, the plaintiff advanced similar arguments in her attempt to attach liability to other insurance companies, such as: the policy included signatures of certain corporate officers of other insurance companies, those other companies billed and received her premiums, and the policy included a branding reference to another insurance company. *Id.* at *3. The court found each argument insufficient to establish privity of contract with the other insurance companies:

> [D]espite the broader branding of documents with Liberty Mutual's name and the administration of payments by the Liberty Mutual umbrella of companies, the Policy clearly indicates that Rumick contracted with LIC, not any other Liberty Mutual entity. Therefore, she must direct any breach of contract claim against LIC, not LMIC or LMHC, unless she has alleged a basis to hold them liable as non-parties to the Policy.

*Id.* at *3 (footnote omitted stating that a document controls over contradictory allegations).[6]

In sum, none of the allegations discussed above—the singular reference to SIC on the claim reporting page, the signatures of alleged SIC agents on the Policy, or an SIC employee's

---

[6] Here, OVPREC alleges that the signing parties were employees, agents, and/or ostensible agents of SIC but *does not allege* that the signing parties were unaffiliated with Scottsdale Surplus. In *Rumick*, the plaintiff *had* alleged (and the court acknowledged) that at least one signing party held no role with the privy insurance company. *Id.* Nevertheless, the court found that the existence of such a signature would not override the policy's "clear indi[cation]" of the parties with a contractual relationship. *Id.*

involvement with the claim—plausibly establish a contractual relationship between SIC and OVPREC. An inference otherwise would contradict the unambiguous terms of the Policy. SIC's motion to dismiss should be granted as to count one (breach of contract).

### 2. Bad faith

Under Ohio law, "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action against the insurer." *Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1319 (Ohio 1983). In addition, "Ohio courts . . . have specifically noted that a bad faith claim arises out of the contractual relationship between the insurer and the insured and have consistently rejected bad faith claims where the parties are not in privity with each other." *The William Powell Co. v. Nat'l Indem. Co.*, 141 F. Supp. 3d 773, 782 (S.D. Ohio 2015) (citing *Gillette v. Estate of Gillette*, 837 N.E.2d 1283, 1286-87 (Ohio Ct. App. 2005) (collecting cases)) (remaining citations omitted).

SIC argues that the standard set forth in *Hoskins* is dispositive; because OVPREC cannot establish that SIC is the "insurer" under the policy or is in privity with SIC as a matter of law, its bad faith claim against SIC must also be dismissed. OVPREC resists this conclusion, arguing that Ohio law distinguishes between two types of bad faith claims and one does not require privity of contract. It relies on *Ballard v. Nationwide Ins. Co.*, 46 N.E.3d 170, 173-74 (Ohio Ct. App. 2015), which describes two types of bad faith claims: (1) bad faith claims dependent on the success of the contract claim (i.e., insurer has "no lawful basis to deny coverage"), and (2) bad faith claims independent from the success of the contract claim (i.e., insurer has "no reasonable justification to fail to determine whether its refusal had a lawful basis"). *Id.* (quoting *Essad v. Cincinnati Cas. Co.*, 2002-Ohio-2002, ¶¶ 34-35 (Ohio Ct. App.)).

11

The distinction between these two types of bad faith claims, however, is the *success* of the contract claim; it does not detract from the general proposition that a bad faith claim still requires privity of contract between the parties. *See The William Powell Co.*, 141 F. Supp. 3d at 782. The fact that there are two types of bad faith claims under Ohio law does not help OVPREC because it has not shown privity of contract with SIC. *Cf. Williams v. Travelers Home & Marine Ins. Co.*, 402 F. Supp. 3d 499, 505 (E.D. Wis. 2019) (citing *The William Powell Co.* and collecting cases) ("Most other jurisdictions to have considered the issue have declined to recognize bad-faith claims against agents, independent adjusters, and other entities that are not in privity with the insured.").

OVPREC has not adequately alleged privity of contract with SIC to support any plausible bad faith claim under Ohio law. SIC's motion to dismiss should be granted as to count three (bad faith).

### 3. Declaratory judgment

Having concluded that both the breach of contract and bad faith claims should be dismissed, OVPREC's claim for declaratory judgment against SIC cannot stand. Ohio law allows for declaratory judgment related to the "rights, status, and other legal relations" among parties. Ohio Rev. Code § 2721.02(A). Because OVPREC has failed to demonstrate any legal relationship between the itself and SIC, SIC's motion to dismiss should be granted as to count two (declaratory judgment).

### B. Motion to remand

OVPREC argues that removal was inappropriate because the parties are not completely diverse; both SIC and OVP are citizens of Ohio. It also argues that SIC did not consent to Scottsdale Surplus's removal, violating the rule of unanimity. *See* 28 U.S.C. § 1446(b)(2)(A);

12

*Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999) ("[I]n order for a notice of removal to be properly before the court, all defendants who have been served or otherwise properly joined in the action must either join in the removal, or file a written consent to the removal."). Scottsdale Surplus responds that SIC was not properly joined to the lawsuit and, as such, SIC's consent to the removal was not required.

Scottsdale Surplus bears the burden of establishing diversity jurisdiction. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Removal based on diversity of citizenship[7] is prohibited "if any of the parties in interest *properly joined* and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a)(2) (emphasis added). The phrase "properly joined" refers to the fraudulent joinder doctrine, which is a judicially created exception to the complete diversity requirement. *See Plymouth v. Dimension Serv. Corp.*, No. 2:17-cv-130, 2017 WL 726943, at *2 (S.D. Ohio Feb. 24, 2017), *report and recommendation adopted*, 2017 WL 1276727 (S.D. Ohio Apr. 6, 2017). It was created "to prevent the abuse of the removal procedure by a plaintiff who had a legitimate claim only against an out-of-state defendant, but who improperly joined or failed to serve an in-state defendant solely in order to prevent the out-of-state defendant from exercising its right of removal." *Id.* at *2.

To establish fraudulent joinder, the removing party "must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law. . . . However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, th[e] [c]ourt must remand the action to state court." *Coyne*, 183 F.3d at

---

[7] Under 28 U.S.C. § 1332(a)(1), "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States. . . ."

493 (citing *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).  Any doubt as to the facts, applicable state law, or propriety of removal must be resolved in favor of the non-removing party and remand.  *Id.* (citing *Alexander*, 13 F.3d at 949).

The Sixth Circuit has acknowledged that its "fraudulent-joinder law is derived" from the Fifth Circuit's approach.  *See Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011).  In *Walker*, the Sixth Circuit clarified the fraudulent joinder analysis, relying on the Fifth Circuit's decision in *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc).  *Id.* at 952-53.  In *Smallwood*, the Fifth Circuit identified two types of improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  Here, the jurisdictional facts are not disputed; both OVP and SIC are Ohio citizens.  Therefore, only the second type of improper joinder is at issue, which occurs where the plaintiff either fails a Fed. R. Civ. P. 12(b)(6)-like analysis based on the pleadings, or the plaintiff states a claim for relief, but the plaintiff has misstated or omitted facts relevant to the existence of a colorable claim under state law.  *Id.*  In the latter scenario, a court would have discretion to "pierce the pleadings" for limited, carefully tailored factfinding to determine whether a party is properly joined.  *Id.* at 573-74.

Because the Court has determined that OVPREC has failed to state any claim against SIC under Fed. R. Civ. P. 12(b)(6), no fact inquiry is necessary.  SIC is not a properly joined party under § 1441(a)(2).  OVPREC's second argument, that Scottsdale Surplus cannot remove the action without unanimity of defendants, is therefore moot.  *See Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564 (6th Cir. 2015) ("By its terms . . . § 1446(b)(2) only requires the consent

14

of *properly* joined defendants; the consent of a defendant that has been *fraudulently* joined is not necessary.") (citations omitted).

Scottsdale Surplus's notice of removal states that the parties (other than SIC) are diverse, the amount in controversy exceeds $75,000.00, and SIC is not a properly joined defendant. (*See* Doc. 1 at ¶¶ 3-4, 6-8). Scottsdale Surplus's final contention has been resolved in Scottsdale Surplus's favor and the other elements of diversity jurisdiction are undisputed. Scottsdale Surplus has met its burden to establish diversity jurisdiction. Remand is not warranted.

## IT IS THEREFORE ORDERED THAT:

For good cause shown, Scottsdale Surplus's motion for leave to file its proposed surreply (Doc. 17) is **GRANTED** and defendants' requests for oral argument are **DENIED**.

## IT IS THEREFORE RECOMMENDED THAT:

1. SIC's motion to dismiss (Doc. 6) be **DENIED as moot**.
2. OVPREC's motion to remand (Doc. 11) be **DENIED**.
3. SIC's motion to dismiss (Doc. 15) be **GRANTED**.

Date: 9/28/2020

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| OHIO VALLEY PHYSICIANS, INC., et al., <br>     Plaintiffs, | Case No. 1:20-cv-453 <br> Dlott, J. <br> Litkovitz, M.J. |
|     v. | |
| SCOTTSDALE INSURANCE CO., et al., <br>     Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981).